DOE, DOE, DOE. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Thank you Ms. Geddes and good morning. I'm Beverly Martin and I'd like to welcome everyone to this argument. I wish we could be together in person and hope that someday soon again we can hear cases that way. I, on a personal note, I grew up in Macon, Georgia and I thought that when you looked up the definition of a federal judge in the dictionary you saw a picture of Lanier Anderson. So it's my privilege to be with Judge Anderson this morning and Judge Anderson and I together are very grateful to Judge Tolman for helping us with our work this morning. Judge Tolman is with us all week and he's been doing the heavy lift so we're very grateful to you Judge Tolman. Thank you Judge Martin. This panel is going to hear one case this morning. I believe we have promised the lawyers that the first two minutes of their argument will be uninterrupted. So we'll try to keep track of that. And otherwise Ms. Geddes is going to try to help us keep up with the time by announcing when you have two minutes remaining for your argument and she will announce as well when your time has expired. Does that cover everything Ms. Geddes? Yes Judge. Great. All right. Then I'll call the case of the Center for Individual Rights versus Irena Shivaldina. Good morning Your Honors. Good morning. May it please the Court. I am Chris Haddad and I represent the appellant Irena Shivaldina. There is a famous quote that we're all familiar with that says he or in this case she who represents herself as a fool for a client and although the law regarding pro se litigants thankfully does not characterize them as fools it does acknowledge and this Court has said specifically that pro se litigants are not held to the same standard as lawyers. They're to be given more latitude and leeway. Along these same lines is the principle of law that says that any ambiguities in a contract are to be construed against the drafter of a contract and this is particularly so when the drafter is an attorney. The final judgment in this breach of contract case in favor of CIR should be overturned. The basis for that is that summary judgment was improperly granted and also there are public policy grounds that dictate that this one which prohibits the charging of a fee for pro bono representation and also the manner of solicitation of legal services. I would like to start my argument by addressing summary judgment. The district court's granting of summary judgment against this pro se litigant whom I'm representing now without any prior notice or meaningful reconsideration was highly prejudicial to Ms. Chabaldina. In fact her opponent CIR did not seek summary judgment on the breach of contract claim. Instead taking the position that what it calls the assignment clause or the settlement clause of the contract created genuine issues of material fact about whether Ms. Chabaldina was required to request a reasonable amount for CIR's costs and expenses, disbursements and attorney's fees pursuant to the pro bono agreement. The district court however granted summary judgment in favor of CIR finding that the agreement between CIR and Ms. Chabaldina was a valid contract and the district court found no ambiguity in interpreting the agreement and so concluding the district court determined that Chabaldina or her counsel instructed CIR to withdraw its motion for approximately $114,000 in attorney's fees based on the terms of a favorable resolution that Ms. Chabaldina reached in her state court litigation. Interestingly docket entry 25 is cited in the order granting summary judgment specifically page 10 to support that the $114,000 was something that Ms. Chabaldina had instructed CIR to withdraw its motion for. In looking at the docket however docket entry 25 does not seem to reflect that so I would ask this court to review that docket entry and that supports the position that the district court's ruling was erroneous in that it wasn't based on an accurate recitation of what's in the record. Now in terms of the rules of civil procedure I will acknowledge on behalf of my client that the district court may grant summary judgment on grounds that are not raised by a party but only after giving notice and a reasonable time to respond and that's rule 56. Here instead of notifying Ms. Chabaldina that the court was considering granting summary judgment on the grounds that she conceded that the $10,000 payment was sensible or a reasonable fee under the contract the district court simply acted and granted summary judgment. And so had Ms. Chabaldina been afforded a reasonable opportunity to present evidence to the contrary per rule 56 she would have been able to present evidence that showed that ongoing negotiations between a multitude of parties including Ms. Chabaldina's attorneys, Mr. Katz's was involved in other state court litigation with Ms. Chabaldina, CIR itself and Mr. Rossman was ongoing so there was you know a multitude of parties and negotiations that were going on and there is evidence in the record to support the fact that Mr. Rossman on behalf of CIR had authorized these negotiations to go on. Docket entry 160 is a email where Mr. Rossman is emailing the attorney Mr. Schachter regarding the negotiations and is that this is Judge Anderson talking is that the email dated December 14 2015? It is correct your honor at 503 p.m. in which he in effect says to Schachter and Chabaldina that Adam he's talking to Schachter I'll leave the negotiations to you. That is correct your honor. So your position is that that CIR authorized Schachter to negotiate the settlement for CIR as well as for Chabaldina? That's correct your honor that is correct. So you suggest that we should vacate the district court summary judgment on the breach of contract both because of the rule 56 notice violation issue and also genuine issues with that? That is correct your honor that is exactly our position and there was you know the judge the district court judge's ruling which appears to again have been premised on this idea that Ms. Chabaldina somehow had represented that $10,000 was a reasonable amount for CIR to be paid. Again as I point out that is not reflected in the record as so reflected in the in the order granting summary judgment but also in terms of the prejudice to Ms. Chabaldina that goes beyond the mere notice and an opportunity to present evidence which are obviously significant in and of themselves particularly when dealing with a pro se litigant but also Ms. Chabaldina would have had an opportunity had she been afforded that to put that statement alleged statement in context in terms of any and this would have contradicted the this district court's finding that the statement was somehow a concession that this pro bono agreement contemplated the payment of attorney's fees uh also the agreement called for CIR to fund the case through outside funding was although it was labeled a pro bono agreement uh so Ms. again in the terms of prejudice this is Judge Anderson speaking yes sir and uh you you're getting into your argument uh that this contract in its entirety the retainer agreement is against public policy because it uh represented itself as a pro bono agreement but really contemplated fees that seems to me to be frankly uh with respect a near frivolous argument in that pro bono work often in fact routinely contemplates court awarded uh fees for the pro bono attorney upon prevailing or upon settlement and recovery of amounts from the opposing party uh reasonable fees out of that recovery is is that not a common account I don't know how common or you can please go ahead and answer Judge Anderson's question if you would yes your honor uh I I cannot speak to how common or uncommon it is I raised that issue in terms of the question of um the rules of professional uh conduct rules regulating the bar for Florida specifically uh define a pro bono agreement as one that does not contemplate a fee uh and so that was the the basis for that position your honor thank you thank you your honor Mr. Rossman thank you your honor my name is Michael Rossman I represent the Apelli Center for Individual Rights this case has been extensively briefed I'd like to highlight four or five points for the court I'd like to point out the absence of prejudice from any procedural error I'd like to point out whether that there has been waiver of Ms. Shevaldina's various illegality defenses and I'd like to discuss this issues of material fact that Mr. Haddad raised in his argument Judge Martin this is Judge Tallman our phone lines went down after three minutes and 14 seconds of the argument and I just oh no I didn't realize that I know you were you were I noticed you were quiet just a moment I'm usually quiet um wait uh that means you missed most of Mr. Haddad's argument that would be correct okay got three his first three minutes and 14 seconds um Mr. Rossman I the best way I know how to handle this is to allow you to um sit down and start over in just a minute um could you just tell me you didn't hear any of Mr. Rossman's argument either I guess uh no I didn't hear anything from okay oh so if if uh we could have Mr. Haddad come back uh to the podium and I don't know how to do the timing on this but I'd like to give Judge Tallman a chance to to uh question uh Mr. Haddad uh so we'll we'll just see how that goes and and um Judge Tallman maybe once you are satisfied that you understand uh the argument on uh you'll um on behalf of the uh uh the appellant you'll let me know all right I certainly will and Mr. Haddad uh I lost you at the point where you were explaining that uh Sheveldina would have been able to present evidence in opposition to summary judgment but uh I don't know what evidence thereafter outlines thank you uh thank you Judge Tallman uh may it please the court if I may proceed uh I will try to pick up from that exact point um so in addressing the argument that the district court's uh sua sponte ruling um for summary judgment was prejudicial to Miss Sheveldina um I've outlined how I believe the prejudice uh was significant in this case and and and warrants um the summary judgment being overturned so instead of I've pointed out initially that uh in the judges district court judges uh determination for summary judgment the court said that the uh Miss Sheveldina or her counsel instructed CIR to withdraw its motion for approximately $114,000 in attorney fees based on the terms of a favorable resolution that Miss Sheveldina had reached in her state court litigation and there's a reference to 25 does not um and have such a uh a document or or any sort of statement by Miss Sheveldina so I would respectfully request that the court look at that issue um and then uh it also I was pointing out that um by Miss Sheveldina uh instead of notifying her that and she uh on the basis that she essentially the district court has determined that she had conceded that $10,000 was a sensible or reasonable fee under the contract and therefore granted summary judgment had she been afforded a reasonable opportunity to present evidence to the contrary she would have been able to present evidence showing the ongoing negotiations between a from the the other state court case CIR itself and Mr. Rossman and um Judge Anderson had noted that I had referenced an email which is uh found in Document Entry 160 where Mr. Rossman reaches uh sends an email to uh Adam Schechter the attorney involved on December 14, 2015 um essentially saying I've spoken to my boss if CIR can get $75,000 that would satisfy so he's authorizing the negotiations to go on um and also uh had she been afforded the opportunity to present evidence in opposition to summary judgment that would have given her the $10,000 as a sensible or reasonable amount in proper context this would have contradicted the district court's finding that the statement was somehow a concession that the agreement contemplated uh the payment of the fees and as I under as I understood the record in the state court litigation Cass was uh was going to have to pay her more than a hundred thousand in fees is that correct that is well I believe so yes your honor there was there was an uh an award that was in excess of that amount however she did not receive that much but yeah no I understand that it's just that what we had here were essentially dueling attorney's fees that were uh Cass was potentially liable to pay her attorney's fees uh in the 11th circuit litigation and she was potentially liable to pay Cass attorney's fees in the Miami litigation and that was all part of the negotiations that resulted in a global settlement have I got that right that is accurate yes sir your honor um and that's why I made the argument in terms of the and the intent behind any statements that she would have made uh regarding um you know the settlement and the authorization to settle so uh those were material questions of fact regarding the reasonableness of the the money that the 10,000 or the settlement amount and uh for those reasons uh summary judgment uh was in you know from our perspective improperly granted and prejudicial uh and also I I failed to note earlier I'll just briefly state um the motion for reconsideration that was filed um which I believe opposing counsel has indicated gave the opportunity uh to to make her her case anyway um the standard for review of a motion for reconsideration is different than summary judgment and the order that was entered on the motion for reconsideration did not go to the substance of any of the issues and summary judgment um and simply just made the finding that uh it was the circumstances didn't warrant the extreme uh remedy of reconsideration okay I think I have your contact argument in mind uh did you address the uh the Florida DPPA counterclaim I did not your honor um I essentially uh will rely on the uh the written brief for that okay and then how about that that's fine I got it the public policy argument I started to address um and then I ran out of time um and depending on depending on counsel's uh Mr. Rossman's argument I may have an opportunity to respond to that very well we've reserved five minutes for rebuttal and we'll give that to you thank you Judge Martin all right thank you Mr. Rossman may it please the court my name is Michael Rossman I represent the Appellee Center for Individual Rights this case has been extensively briefed I'd like to highlight three or four points and then respond to a few of Mr. Haddad's arguments first I'd like to discuss whether there's been prejudice second whether there's waiver of any of these various illegality defenses and third whether there were any issues of material fact that were raised in the lower court now as to prejudice under rule 61 it is appellant's burden to show that any procedural error was prejudicial now Mr. Haddad says in his argument that it was highly prejudicial for the court to grant summary judgment without notice but if you look at the most recent brief that he filed their reply brief and do a word search for the word prejudice it doesn't appear and that's because he makes no argument none whatsoever in his brief as to how any procedural error was prejudicial and I submitted under the procedures of this court he has waived the of civil procedure requires that all affirmative defenses be pled in the answer illegality is an affirmative defense Ms. Shevaldina did not plead it in her answer and thus she waived it and again if you review Mr. Haddad's most recent brief 8c doesn't appear anywhere in it and there is no mention of the fact that Ms. Shevaldina simply did not assert it in her answer now as to whether or not there were issues of disputed fact Shevaldina makes essentially two arguments first that we conceded it in opposing her motion for summary judgment and second that the district judge didn't supply enough detail on the issue of damages now as to the concession we didn't concede anything in our opposition if you review the pages that Mr. Haddad refers to they're mostly arguing that Shevaldina's so-called material facts were not material at all and capital this is Judge Anderson speaking and it seems to me uh this is just my thinking uh seems to me that there are uh considerable issues of genuine uh genuine issues of material fact that would preclude summary judgment and I list a few first the 12, 15, December 15, 2015 telephone conversation in which Rossman claims that he told both Shackman and Shevaldina that uh $75,000 would be satisfactory and that $10,000 which he already knew about was being proposed was unreasonable and would be considered a breach the problem with that is that Shevaldina's precisely that seemed like to me creating an issue of fact next uh your own CIR's own answer to interrogatory uh I forget the number uh says that it never advised Shevaldina not to enter a settlement or otherwise uh uh that the settlement amount um was unreasonable and that seems to me to bolster Shevaldina's affidavit that she was not told that it was unreasonable and would consider a breach and not Rossman's affidavit to the contract another interrogatory uh uh that CIR answered was that they couldn't remember the specifics of the telephone calls uh uh and and and and they didn't mention this uh they did not mention uh that it would be a a breach of contract and then there was the December 17 email which came of course after the December 15 telephone call that gave wire transfer information to Schachter so that CIR could receive uh the $10,000 and and that is the one that did not mention uh it being a breach of contract that I misspoke when I talked about the previous interrogatory not not mentioning the breach of contract but but the crucial thing is that on December 17 that uh email uh does not mention a breach of contract and then finally on December 14 which is the date before that crucial telephone call uh uh uh Rossman says that they'll be satisfied with $75,000 but then he says and I'm quoting I'll Adam he says to Schachter I'll leave the negotiating part of it to you seems to me that creates a genuine issue of fact that uh that uh actually authorized uh uh Schachter to do the negotiating for him uh of course we're not interested in the credibility of the parties but we are all we're interested in is that there's genuine issue of fact thank you uh Judge Anderson let me respond to the last one first if I may the December 14th email was the subject of a motion in limity the court excluded it Ms. Shevaldina has not appealed that order excluding the December 14th email it is inadmissible evidence in this case what about the rest of what I said yeah okay $10,000 $10,000 uh the the the argument that we did not say specifically that the 10th there is an issue of fact it's just not material because you don't have to tell the other party that they're breaching a contract a breach is a breach if they breach the contract that's a breach there's no obligation to um not to take the settlement Ms. Shevaldina was being represented by lawyers in state court the whole negotiation was a negotiation of a settlement in another lawsuit we had no obligation to advise her about whether to enter into that agreement or not it wasn't our case the specifics of the telephone calls are specific words your honor council uh Judge Anderson talking retainer agreement seems to me to suggest that uh you will advise uh Shevaldina uh respect to uh the amount of attorney's fees for your case in the 11th circuit you'll have to give me the language because I don't think it says that at all I'm quoting CIR may withdraw from the representation or may require and the preface to that is uh if client refuses a settlement offer that CIR considers reasonable well that's the important part of it isn't it yes in other words you've got to express uh the reasonableness well no if it's a reasonable settlement then that obligation kicks in uh that's not what happened here if she refuses a reasonable settlement she wasn't refusing a settlement she was on the advice of a different attorney uh going into a settlement that that provision that you're just describing kicks in if if there's a settlement offer on the table and she says no I don't want to settle this has nothing to do with our set of facts um and then the last thing Mr. Rossman this is Judge Holman are you saying that when you withdrew your petition in the 11th circuit for $115,000 in attorney's fees plus cost that you did not know you were only going to receive $10,000 out of the settlement of the Miami action no we were in we we did know that your honor but we were instructed to do so by Ms. Shevaldina that's the whole and at the time you did that you had in your mind that that was an action in breach of contract and you were going to turn around and sue her for that later yes okay but you did not say that in your uh December 17 email December 17th email was after the fact your honor I don't have it in front of me but under the agreement take a look at the agreement that Ms. Shevaldina's state court attorneys entered into under the agreement this is what we were obligated to do and we were instructed that we were going to follow that agreement so we provided the information that that agreement required us to provide um if I may uh return to my argument your honor um so the the question of damages um that argument was also waived uh by Ms. Shevaldina by not raising it in the district court on her motion to reconsider and again in Mr. Haddad's most recent brief she does not dispute this at all you can look at part three of her argument the first sentence of part three points out that we do say that she waived this argument and then says nothing at all thereafter about it any explanation of why she did not waive it um there there was um a reference that Mr. Haddad made at the outset of of um of his argument about Ms. Shevaldina being a pro se litigant and that is true she was a pro se litigant but this court has um consistently held that pro se litigants have to follow the rules and I will cite Moon versus Newsom 863 F 2nd 835 where a case was dismissed because a pro se litigant failed to appear for a deposition and then failed to pay the sanctions that was imposed as a consequence Ms. Shevaldina had an opportunity to put in any evidence she wanted in her motion to reconsider that's where um she had she had an opportunity to put in any evidence she wanted any arguments she wanted she did make arguments it's just different than the arguments she's making now and by failing to make them at the time that she made her motion to consider she waived any other arguments I'd be happy to answer any of the court's questions either about the cross appeal or the the DPPA argument but other than that I have no additional things to say counsel did the district court err when it failed to credit the $10,000 that you had received when it entered judgment in the full amount of 115,000 which with interest is now at 133,000 well I don't know exactly what the district court did to be perfectly blunt we had asked for more like 119,000 in damages because there was um post motion uh fees and he reduced that to 115,000 roughly um and if he did that by he may may have been neglected the $10,000 or he concluded that we were only entitled to $10,000 for the work that we did uh that's that's part of 149-2 um sort of towards the back of uh 149-2 on pages 85 to 89. This is Judge Anderson I'd like to ask one question about your cross appeal uh you in your operative brief the late last one simply referred to your previous brief which is a violation of our rules and under we have discretion to simply disregard your argument in that regard which I might be inclined to do except the claim of fabrication of evidence uh gives me a little pause would you give me a little detail about that well your honor first of all there was two sets of briefs here and we were told by the clerk's office that we didn't have to repeat the same arguments that we made in our first set of briefs in the second set of briefs so and so I'm not sure what rule you're referring to when you said that that it's a violation of your rules I know I didn't refer to any brief in the lower court I referred to another brief that we had filed in this court uh and so far and if you review the the first brief that we filed if we'll look at that I was not familiar that the clerk gave you such directions but focus on the claim of fabrication for me if you would well as you know your honor we we made a motion in the court claiming that Ms. Shevaldina's opposition to our motion for summary judgment on the driver protection driver's privacy protection act claim was fabricated on the lower court and we put in an expert's evidence to support that proposition the the lower court while there was a report and recommendation that that the motion for a order to show cause be denied because it was moot and eventually the court the district court dismissed all pending motions as moot so that's the the background of it if you review it's it's discussed at great length in the first principal brief that we've um that we submitted in this case uh I'm not sure what other pieces but that's sort of the the gist of it all right I'll ask the other side about that I'm sorry your honor I'm afraid I didn't I think Judge Anderson was indicating that he had gotten information from you that that he he wanted and he will take it up with Mr. Haddad did I get that right Judge Anderson correct correct all right um all right so Mr. Haddad you have reserved five minutes five minutes for rebuttal and we'll hear from you now thank you your honor uh well I will begin by um addressing the issue of the prejudice again and whether that was adequately uh raised previously um in fact in looking at the motion for reconsideration that was filed by Ms. Chabaldina pro se at the time uh she did raise the question of um the 114 000 and the fact that CIR uh had authorized the outside counsel was being used in that regard to to facilitate the the negotiations and all of those questions and all of those issues pertain to the uh district courts granting summary judgments to respond and also the question of the reasonableness of the of fees the ten thousand dollars uh and as as we've as has already been pointed out uh Mr. Rossman uh authorized those negotiations and um did accept the the uh the ten thousand dollars uh as as uh as from Mr. Katz when it was sent to him um in terms of uh other issues relating to summary judgment uh I don't know if the court has any other questions if not I would move on to the public policy argument in terms of the public policy argument uh one of the issues deals with the manner in which Ms. Chabaldina uh retained count uh retained uh CIR and the evidence shows that Ms. uh Chabaldina received an email from CIR counsel this is Judge Anderson talking and you're about to get into your solicitation uh argument correct does not the relevant Florida statute expressly exclude uh legal aid organizations well there is uh I believe it does yes your honor however uh it would be our position that this uh organization is not uh operating as a legal aid organization um CIR is uh a um a law firm that's um domiciled in uh the District of Columbia and they uh do not as I said operate strictly as a legal aid uh organization such as uh we have um you know in Florida throughout the country which are attorneys that work uh you know for on a salaried basis and do pro bono cases throughout the state this solicitation I mean there are cases that talk about uh contracts being voided uh as a result of solicitation um I've cited a few of them in my brief uh Spencer Payne versus Gerson and uh Thomas versus Ratner are two examples where uh reached out to uh litigants regarding prospective uh representation and uh the the act of doing so um was deemed to be uh violative of the statute prohibiting such um and therefore uh would uh serve to to void the contract ab initio okay counsel Judge Tallman I I thought the state record was that Professor Eugene Bollick at UCLA had been contacted by Shevel Bina who was seeking counsel and that Shevel Bina referred her inquiry to CIR who then reached out to her to ask if she would be interested in talking with them what's improper about that well I think what happened she had reached out and then there was the initial our our issue your honor is that CIR was the one that initiated the contact with Ms. Shevel Bina now the fact that the uh professor from UCLA may have been a conduit or somehow involved in the negotiation still doesn't detract from the the basic uh fact that CIR reached out to her first but but if she approached Bollick asking for representation and the professor for whatever reason said well I can't do it but let me refer you to somebody who can what's improper about that I'm having a hard time understanding why that's an illegal solicitation maybe I don't understand Florida rules of improper about that your honor uh however uh it's our position that the contact should have between CIR and the Ms. Shevel Bina should have been uh not should not have been initiated by CIR well but it wasn't if the state of the record is that she made the first over to her and he simply referred her to another lawyer for whatever reason this is not like Mr. Rossman was making a cold call on their client because she had an interesting case that CIR was interested in I I know your honor it is not and I would I concede that that was not a cold call sort of um you know your argument has expired uh uh just tell me this Mr. Heday has um you know satisfies your question uh we will uh end the argument now is that all right